IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL O'BRIEN,                                Civ. No. 08-6281-AA

        Plaintiff,                       OPINION AND ORDER

   v.

THOMAS DELON,

        Defendant.
_____

Edwin C. Perry
Ryan M. Bledsoe
Tonkon Torp, LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
    Attorneys for plaintiff

Richard J. Whittemore
Stephen F. Deatherage
Laura Caldera Taylor
Bullivant Houser Bailey, PC
888 SW Fifth Avenue, Suite 300
Portland, OR 97204
    Attorneys for defendant

1   - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Michael O'Brien filed this action against defendant Thomas DeLon alleging breach of contract and a violation of Oregon Securities Law under Or. Rev. Stat. § 59.135. Defendant now moves for summary judgment on both of plaintiff's claims, and plaintiff moves for summary judgment on defendant's affirmative defense of waiver. The parties' motions are denied.

## I. BACKGROUND

On November 16, 2007, plaintiff and defendant executed a Stock Purchase Agreement (SPA) for the sale of defendant's car dealership business (the Company) to plaintiff for $9,390,000. The parties also executed a Management Agreement which stipulated that plaintiff would begin managing the Company on December 1, 2007. The SPA contains the following:

> No document or information provided to [plaintiff] by or on behalf of the Company or [defendant] in connection with the transactions contemplated by this Agreement, contains or will contain any untrue statement of a material fact, or omits or will omit to state a material fact necessary to make the statements contained therein not misleading. Attached hereto and by this reference made a part hereof is a true and accurate copy of the [Company]'s September 2007 financial statement.
>
> ....
>
> [Plaintiff] shall have for a period through November 31, 2007, at [plaintiff]'s cost and expense, an opportunity to inspect the operations and property (real and personal) of the Company and the financial, business and corporate records of the Company and satisfy himself, through designated agents, of the feasibility of closing the contemplated transactions.

On the morning of November 30, 2007, plaintiff's accountant

gave notice to plaintiff of financial irregularities that he discovered within the September 2007 Financial Statement. Specifically, plaintiff's accountant discovered that the value of the Company was at least $1,918,955 less than the value stated in the September 2007 Financial Statement. Nevertheless, on the same day, plaintiff indicated that he was satisfied with the feasibility of closing the transaction and released escrow funds to defendant in accordance with the SPA. On December 1, 2007, plaintiff began managing the Company. The parties intended to close the transaction as of January 31, 2008, however, the closing date was extended to February 28, and then March 31, 2008.

On March 13, 2008, plaintiff sent defendant a letter detailing the inaccuracies found in the September 2007 Financial Statement and accusing defendant of breaching the condition of the SPA which warranted the accuracy of the September 2007 Financial Statement. Plaintiff asserted that the Company's value was overstated by approximately $3,500,000 and requested that the parties work out a mutually acceptable resolution.

On March 21, 2008, plaintiff sent defendant an email regarding closing on the SPA. Defendant responded that he was wary of pursuing the transaction in light of plaintiff's belief that the value of the Company was overstated. Defendant also noted that "the price is the price," and that he would not have considered selling the Company for an amount lower than the price agreed to in

the SPA. Defendant asserted that he may not elect to close the transaction unless plaintiff was willing to complete a mutual release and waiver of the contractual obligations of the SPA.

On March 26, 2008, defendant questioned plaintiff's intent to initiate litigation against defendant for breach of contract after the parties closed on the SPA. Plaintiff responded that he intended to close the transaction in compliance with the SPA, and that although he believed that a breach of contract had occurred, defendant's breach did not release him from continued performance under the SPA.

Between March 26 and March 31, 2008, the parties continued to discuss closing the transaction. Defendant repeated his request that he be released from liability for any contractual breach, but plaintiff refused. Defendant offered plaintiff rescission of the SPA and reimbursement of the escrow funds, but plaintiff rejected that offer. On March 31, plaintiff met defendant and presented a check to him in the amount of $10,500,000. However, defendant refused to accept tender of the check.

Sometime between April 1 and June 26, 2008, plaintiff filed suit against defendant for specific performance under the SPA. On July 2, 2008, the parties closed on the SPA, actualizing plaintiff's purchase of defendant's business.

On September 5, 2008, plaintiff brought this action alleging that defendant breached an express warranty in the SPA, because the

4   - OPINION AND ORDER

financial statement defendant provided to plaintiff contained untrue statements or omitted statements of material fact. Plaintiff argues that the breach is material, because he relied on the financial statement in negotiating the sale price of the Company.

Defendant asserts that plaintiff waived any claim for damages arising from defendant's breach of the SPA, because plaintiff was on notice of the breach before the conclusion of plaintiff's due diligence period and before closing of the transaction.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a

5    - OPINION AND ORDER

genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

### III. DISCUSSION

A. Breach of Express Warranty and Causation of Damages

Defendant moves for summary judgment on plaintiff's breach of warranty claim, arguing that his breach could not have caused plaintiff's damages, because plaintiff was put on notice of the breach during the due diligence period and was aware of the full extent of the breach well before the parties closed on the SPA.[1] Thus, defendant maintains that plaintiff could not have relied on defendant's warranty when the transaction closed and plaintiff paid the contract price.

Plaintiff responds that because of defendant's breach, plaintiff paid $3,500,000 more than the actual value of the Company. Specifically, plaintiff argues that the breach caused

---

[1]For purposes of summary judgment only, defendant does not deny that a breach occurred.

6    - OPINION AND ORDER

plaintiff to unwittingly agree to an inflated sales price of the Company at the formation of the SPA. See CBS Inc. v. Ziff-Davis Publ'g Co., 75 N.Y.2d 496, 503 (1990)("Once an express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled.").

In order for an express warranty to exist under Oregon law, "there must be, as part of the contract of sale, either an express undertaking to that effect, or some affirmation or representation as to the quality or condition of the thing sold, made at the time of the sale, for the purpose of inducing the buyer to make the contract . . . ." Abilene Nat'l Bank v. Nodine, 26 Or. 53, 54, 37 P. 47 (1894). Furthermore, "the buyer must have relied upon the agreement or representation in making the purchase." Id. Put another way, "[n]o legal wrong is caused by false and fraudulent representations unless they induce action in reliance upon them." 27 WILLISTON ON CONTRACTS § 69:32 (4th ed.).

Here, it is undisputed that, by the end of the contractual due diligence period, plaintiff had notice that the warranted September 2007 Financial Statement contained substantially false or erroneous representations. However, plaintiff asserts that he was not aware of the full extent of the misrepresentations until several months later.

7   - OPINION AND ORDER

Whether and to what extent plaintiff relied on defendant's warranty in negotiating and executing the SPA remains an issue of fact and thus may not be determined at summary judgment. Therefore, defendant's motion for summary judgment is denied.

B. Waiver

Defendant next moves for summary judgment on grounds that plaintiff's actions in affirming the SPA after notice of defendant's breach waived any claim for damages based on breach of warranty.

Plaintiff cross-moves for summary judgment on defendant's affirmative defense of waiver.[2] Plaintiff argues that upon discovery of the breach, he was entitled to an election of remedies, and that he rightfully elected to close the SPA and sue for damages. See Mohr v. Lear, 239 Or. 41, 48, 395 P.2d 117 (1964)("When one party repudiates a contract or commits a total breach thereof, the injured party has an election to pursue one of three remedies: he may treat the contract as at an end and sue for restitution, he may sue for damages, or he may sue for specific performance in certain cases."). Thus, plaintiff argues that he rightfully elected to close on the SPA and sue for damages, instead of rescinding the contract and suing for restitution, and that his actions in electing to close the SPA do not constitute a waiver.

---

[2]Plaintiff also cross-moved for summary judgment on defendant's affirmative defense of estoppel, but defendant has withdrawn this defense.

8   - OPINION AND ORDER

A party to a contract "may waive performance of any of its provisions if he so chooses." <u>Cross v. Campbell</u>, 173 Or. 477, 493, 146 P.2d 83 (1944). Thus, a waiver is an intentional relinquishment of a known right. <u>Waterway Terminals v. P.S. Lord</u>, 242 Or. 1, 26, 406 P.2d 556 (1964). "A party's intent to waive must be manifested by clear and unequivocal action. . . ." <u>Bank of E. Oregon v. Griffith</u>, 101 Or. App. 528, 534, 792 P.2d 1210 (1990).

Whether plaintiff's actions after notice of the breach constitute a waiver or an election of an available remedy involves issues of fact. Therefore, defendant's motion and plaintiff's cross-motion for summary judgment are denied.

<u>C. Oregon Securities Law and Causation of Damages</u>

Defendant also moves for summary judgment on plaintiff's Oregon Securities Law claim under Or. Rev. Stat. § 59.135. In support of this motion, defendant makes the same causation argument he relies on in support of his motion for summary judgment against plaintiff's breach of warranty claim. For the reasons set forth above, defendant's motion for summary judgment is denied.

///
///
///
///
///

<u>IV. CONCLUSION</u>

9    - OPINION AND ORDER

For the reasons discussed above, defendant's Motion for Summary Judgment (doc. 15), and plaintiff's Cross-Motion for Summary Judgment (doc. 21) are DENIED.

IT IS SO ORDERED.

Dated this  24  day of July, 2009.


             /s/ Ann Aiken            
            Ann Aiken
    Chief United States District Judge

10    - OPINION AND ORDER